**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

UNITED STATES OF AMERICA                                                          PLAINTIFF

VS.                          CASE NO.  4:08CR000191-01

PAUL SCOTT KRUEGER                                                                   DEFENDANT

**ORDER**

Defendant Paul Scott Kreuger has moved to suppress statements made before and after his arrest.  The United States of America has responded to the motion and the Court conducted an evidentiary hearing on February 6, 2009.  For the reasons stated below, the motion will be denied as to the post *Miranda* statements.

On October 3, 2007, acting on information in a Cyber Tipline Report, Detective Jennifer Hurd of the Internet Crimes Against Children Task Force executed a search warrant on defendant's residence at the Westside Loft Apartments.  To avoid the necessity of forcible entry, arrangements were made to meet the defendant at his supervisor's office and seek his cooperation in the search. Two plain clothed police officers, Ken Blankenship and Bernard Bizzell, arrived at the supervisor's office and asked her to summon Krueger to her office for an interview.  When Krueger arrived he was asked by the officers to assist with entry into his apartment.  Krueger was cooperative and agreed to do this.  He was told in response to his questions that Detective Jennifer Hurd had obtained the search warrant and specific questions should be directed to her.

1

Kreuger proceeded to his apartment. By this time other officers arrived and he was accompanied by four or more officers including Blankenship, Bizzell, Jennifer Hurd and Todd Hurd. Kreuger used his access device to open the door of the apartment and then two officers entered with weapons drawn to insure that the premises were safe.

Krueger remained in the apartment while officers conducted a search of his computer as well as all the rooms of the apartment. At all times during the search, Krueger was in the presence of an officer. He was allowed to use the restroom, given a soft drink, and allowed to smoke, but otherwise his mobility was extremely limited.

Officer Todd Hurd spent the majority of the time in the company of Kreuger during the search. During this time they engaged in conversation, the extent of which is somewhat in dispute. Kreuger characterizes it as a subtle form of interrogation where he was asked questions about the number of pornographic images on his computer and his motivation for obtaining them. Todd Hurd portrayed it as a more casual conversation, but admitted inquiring of Krueger whether child pornography "was something he had been drawn to" or if Krueger "had a problem" and that he (Todd Hurd) might be able "to get him some help." These questions had been prompted by a statement by Kreuger that "he had screwed up" and "that he needed help."

Detective Jennifer Hurd discovered images of child pornography on Kreuger's computer. After informing Krueger of the discovery, she placed him under arrest and he was transported to a precinct station and placed in an interview room. Before leaving the apartment complex, Kreuger was approached by his supervisor and another female employee. Kreuger stated to these ladies that he had "f----- up and was glad that it was over."

Detective Jennifer Hurd and Todd Hurd rode together to the precinct station, but did not

discuss Todd Hurd's conversation with Kreuger while en route. In the interview room Detective Jennifer Hurd read Kreuger the standard *Miranda* warnings and Kreuger acknowledged that he understood them. Detective Jennifer Hurd then took an audio taped statement from Kreuger that contained incriminating admissions which are sought to be excluded by this motion. Officer Todd Hurd sat in on the interview but asked no questions.

Defendant seeks to suppress statements made at his apartment on ground that he was being interrogated while in custody without the protection of *Miranda* warnings. He also seeks to suppress statements made at the precinct station on the theory that warnings given mid-interrogation, after the defendant gave an un-warned confession, are not admissible under the authority of *Missouri v. Siebert*, 542 U.S. 600 (2004).

The United States has indicated that it does not intend to offer at trial any statements made before the *Miranda* warning was given. This does not relieve the Court, however, of the necessity of determining if defendant was interrogated while in custody at his apartment and if so, whether the interrogation at the precinct station was an overlapping and continuous interrogation so as to render the warning ineffective and a nullity.

The Court must decide whether Kreuger was in custody at his apartment and whether Kreuger was being interrogated by Officer Todd Hurd while at the apartment. If the answer to both questions is yes, the Court must then decide whether any incriminating statements Kreuger made to Officer Todd Hurd at the apartment overlapped or continued into the interrogation at the precinct station.

The first issue is resolved based upon the six common indicia of custody set out in *United States v. Griffin*, 922 F.2d 1334 (8th Cir. 1990). The evidence adduced at the hearing on Feb. 6,

2009 preponderates in favor of a finding that Kreuger was effectively in custody at his apartment.

As to the first factor, it is disputed whether Kreuger was told he was not under arrest. Krueger was never told, however, that he was free to leave.

The evidence strongly supported the second factor considered - whether the suspect possessed unrestrained freedom of movement. Kreuger was continuously accompanied by armed police officers from the time he reported to his supervisor's office. He was asked to leave all electronic devices behind and not allowed to answer the telephone. He was place on a couch in the living area and was under constant surveillance even when allowed to use the rest room.

Evidence of the third factor of who initiated contact was slightly in favor of the defendant. Kreuger was contacted initially by police officers at this place of employment but was the first to begin communication with officer Todd Hurd.

With the exception of Kreuger being placed under arrest before leaving his apartment, the evidence favored the United States on the aggravating factors. The Court found the testimony of both Jennifer and Todd Hurd to be reasonable and credible. There was no evidence of strong arm tactics or deception in any dialogue between the officers and the defendant.

The evidence as to the second issue of whether or not Kreuger was being interrogated by officer Todd Hurd is essentially evenly divided but is slightly in favor of the United States. Kreuger testified that Todd Hurd told him that pornographic images had been found on his computer and he should be honest in admitting to the number of images present. Kreuger also testified that Todd Hurd offered help to him if he would request it. Officer Todd Hurd gave a substantially different version of the conversation. Hurd described the conversation as casual and not intended to elicit any incriminating statements. Hurd denied saying that he knew there was

pornography on Kreuger's computer and only responded to Kreuger that he could get him help when Kreuger volunteered that "he had screwed up." The Court finds Officer Todd Hurd's version to be more credible and concludes that it did not rise to the level of an interrogation.

As to the third issue for the Court to decide, there is no evidence to support the claims that the interrogation of Kreuger after receiving *Miranda* warning violated his constitutional rights.

Applying the rule set forth in *United States v. Black Bear*, 422 F.3d 658 (8th Cir. 2004), the Court must find that the police officer's interrogation technique was not a "designed, deliberate, intentional, or calculated" circumvention of *Miranda*.

Other than the fact that the two officers who had contact with Kreuger - Jennifer and Todd Hurd - were husband and wife, there is nothing to suggest there was any deliberate intentional or calculated circumvention of *Miranda*. There was no communication between Jennifer and Todd Hurd on the way to the precinct station concerning what transpired between Officer Todd Hurd and Kreuger at the apartment. A review of the audio taped statement gives no indication of a continuous or overlapping interrogation.

Kreuger was asked if he wished to make a statement and he consented. Kreuger from all appearances is intelligent and well educated. He had not been in custody for an extended period of time and was well rested. He was properly explained his *Miranda* safeguards and consented to proceeding with the interrogation by Detective Jennifer Hurd.

After due consideration of all of the circumstances the United States has met its burden of proving that the defendant received the benefit of *Miranda* warnings before giving the statements which will be offered into evidence and the Motion to Suppress will be denied.

IT IS SO ORDERED THIS   11   day of   February   , 2009.

                                          _____
                                          James M. Moody
                                          United States District Judge